UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KATHRYN A. RICHARDSON, et al., | ) ) ) | CASE NO. 1:24-cv-00980 |
| | ) ) | JUDGE DAVID A. RUIZ |
| Plaintiffs, | ) ) | |
| v. | ) ) | **MEMORANDUM OPINION & ORDER** |
| SIDDHARTH JAWAHAR, et al., | ) ) | |
| Defendants. | ) | |

In this case, numerous Plaintiffs filed a Complaint against Defendant Siddarth Jawahar, Frank Krasovec, Zohar Ziv, Fabian Urquijo, and several "Swiftarc" limited liability companies and limited partnerships alleging an investment fraud scheme. (R. 1). Two Defendants—Krasovec and Ziv—filed a motion seeking dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that: (1) Plaintiffs have failed to state a claim upon which relief can be granted; and (2) Plaintiffs have failed to comply with forum selection clauses mandating that their claims be asserted in Delaware. (R. 35). Defendant Ziv also moved for dismissal pursuant to Rule 12(b)(2) on the grounds that he is not subject to personal jurisdiction in Ohio. *Id*. Finally, in the alternative, Defendants Krasovec and Ziv requested this Court to transfer the action to the District Court of Delaware pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). *Id*.

Defendant Urquijo filed a separate motion to dismiss for failure to state a claim the same day. (R. 36).

Plaintiffs sought leave to amend the complaint (R. 38), which this Court granted in part and denied in part, indicating the jurisdictional and forum selection clause issue "raises a threshold matter that requires resolution before this matter proceeds any further." (R. 43, PageID# 526).[1] Defendant Jawahar, *pro se*, filed a Motion to dismiss and/or Motion to transfer venue, also pointing to forum selection clauses in the investment agreements. (R. 45). Plaintiffs filed a brief opposing Defendants Krasovec and Ziv's motions to dismiss/motion to transfer (R. 46); and a brief opposing Defendant Urquijo's motion to dismiss. (R. 47). Defendants Krasovec and Ziv filed a reply in support of their earlier motions. (R. 52). Defendant Urquijo also filed a reply in support of his motion to dismiss. (R. 51). Plaintiffs filed an opposition brief to Defendant Jawahar's motion to dismiss/transfer. (R. 53). The issues are ripe for ruling.

## I.     Factual Allegations of the Complaint

The action before the Court arises from an alleged "investment fraud scheme that Defendants perpetrated against the Plaintiffs, which resulted in millions of dollars in loss" ostensibly orchestrated by Siddarth Jawahar, who Plaintiffs maintain, has been federally charged in the Eastern District of Missouri. (R. 1, PageID# 2-3, ¶¶1, 5). Defendants Krasovec and Ziv are alleged to have been General Partners in Swiftarc Entities and "directly solicited Plaintiffs to invest" in a classic Ponzi scheme. *Id*. at ¶2. It is alleged that "Swiftarc Ventures heavily relied upon, and leveraged, Krasovec's and Ziv's experience and involvement to entice Plaintiffs to

---

[1] The Order indicated "Plaintiffs shall have 21 days to file an Amended Complaint **after** the Court rules upon the pending motions to dismiss and/or transfer." (R, 43, PageID# 526) (emphasis added).

2

invest with Jawahar and the Swiftarc Entities." (R. 1, PageID# 9, ¶50). "Since at least August 2019, Urquijo was part of the Swiftarc Ventures team" and "served as the President of Swiftarc Ventures, as well as Jawahar's right-hand man." (R. 1, PageID# 10, ¶62).

The Complaint states that "[w]hile not known to potential investors at the time, upon information and belief, Krasovec, Ziv, and Jawahar formed Swiftarc Ventures to avoid their obligations arising from Swiftarc Capital. As a bonus, Swiftarc Ventures allowed Krasovec, Ziv, and Jawahar to identify and target new investors …." (R. 1, PageID# 11. ¶63). Krasovec and Ziv allegedly fled the Swiftarc Entities due to Defendant Jawahar's prolific deceit and misuse of the Plaintiffs' capital. (R. 1, PageID# 3, ¶4).

Except for Defendant Swiftarc Ventures, LLC, which is a Texas limited liability company, the other seven Swiftarc Entities are alleged to be Delaware companies or partnerships. (R. 1, PageID# 5-6, ¶¶29-36).

According to Plaintiffs' Complaint, "the Swiftarc Funds operated as targeted early and growth stage venture capital funds. Through Swiftarc Ventures and its executives, Krasovec, Ziv, Jawahar and Urquijo solicited investments by offering limited partner interests to Plaintiffs. Investments were induced based on Confidential Private Placement Memoranda (hereafter "PPMs"), Subscription Agreements, and Limited Partnership Agreement (hereafter, "LPAs")." (R. 1, PageID# 13-14, ¶80).

By way of example, Plaintiffs attached to the Complaint various documents, including Exhibit 4, which is an "Amended and Restated Limited Partnership Agreement of Swiftarc Beauty Fund, LP" that contains the following forum selection clause:

> **Section 17.03   Submission to Jurisdiction**. The parties hereby agree that *any suit, action, or proceeding* seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions

contemplated hereby, whether in contract, tort, or otherwise, s*hall be brought in the United States District Court for the District of Delaware* or in the Court of Chancery of the State of Delaware (or, if such court lacks subject matter jurisdiction, in the Superior Court of the State of Delaware), so long as one of such courts shall have subject-matter jurisdiction over such suit, action or proceeding, and that *any case of action arising out of this Agreement shall be deemed to have arisen from a transaction of business in the State of Delaware. Each of the parties hereby irrevocably consents to the jurisdiction of such courts* (and of the appropriate appellate courts therefrom) in any such suit, action, or proceeding and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action, or proceeding in any such court or that any such suit, action, or proceeding which is brought in any such court has been brought in an inconvenient forum….

(R. 1-4, PageID# 198, Exh. 4) (italics added).

## II. Motion to Transfer

Defendants Krasovec and Ziv have asserted that this matter should be transferred to the United States District Court for the District of Delaware pursuant to a valid and enforceable Forum Selection Clause (the "Clause"). (R. 35-1).

A. **Standard for Transfers**

The Sixth Circuit Court of Appeals has set forth the following considerations when considering a motion to transfer based on a forum selection clause:

> A forum selection clause should be upheld absent a strong showing that it should be set aside. [*Carnival Cruise Lines, Inc. v.*] *Shute*, 499 U.S. [585] at 595, 111 S.Ct. 1522 [(1991)]. When evaluating the enforceability of a forum selection clause, this court looks to the following factors: (1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust. *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 375 (6th Cir. 1999). **The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced**. *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1229 (6th Cir. 1995).

*Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009) (emphasis added).

4

Where there exists a valid forum selection clause, "[a] plaintiff's choice of forum is accorded no weight because plaintiff is presumed to have expressed its desired forum in the forum selection clause." *Cliffs Nat. Res., Inc. v. Seneca Coal Res.*, LLC., No. 1:16CV3034, 2017 WL 1963445, at *3 (N.D. Ohio May 12, 2017) (*citing Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 (2013)). "[T]he party acting in violation of the forum-selection clause … must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Atl. Marine Const. Co.*, 571 U.S. at 67.

1. **Krasovec, Ziv, and Jawahar Have Standing to Enforce the Forum Selection Clause**

A court's first step is to determine whether the parties' forum-selection clause is enforceable. *See, e.g.*, *VSAT Sys., LLC v. Intelsat US LLC*, No. 5:20-CV-00041, 2020 WL 435459, at *2 (N.D. Ohio Jan. 28, 2020).

Plaintiffs do not squarely address whether the Clause is valid and enforceable, but raise a myriad of arguments why the Clause should not be applied in this action. They assert the Court should not enforce the Clause because: (1) Defendants Krasovec and Ziv lack standing to enforce it; (2) their claims allegedly do not arise from a transaction of business in the State of Delaware; (3) Plaintiffs claim they are not seeking to enforce any provision of the LPAs; and (4) the Clause does not apply to Plaintiff's claims of conspiracy, fraud or other alleged misconduct by Defendants Krasovec and Ziv. (R. 46, PageID# 551-560).[2]

The Court turns to the standing argument first. Plaintiff avers that Krasovec and Ziv may not enforce the Clause because they are not signatories to the LPA agreements. (R. 46, PageID#

---

[2] Plaintiffs state that if the Court finds the Clause enforceable, the proper remedy would be a transfer of the case and not a dismissal. (R. 46, PageID# 561).

5

552-554). They also point to the "No Third-party Beneficiaries" language in the agreement stating: "nothing herein, express or implied, is intended to or shall confer upon any other Person any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Agreement." (R. 1-4, PageID# 200). With respect to Defendant Jawahar, Plaintiffs acknowledge that he signed the LPAs, but argue that he did so only in his representative capacity. (R. 53, PageID# 673-74).

The Court finds compelling the weight of authority cited by Defendants. "[F]ederal courts routinely hold that where nonparties are closely related to a contractual relationship, a range of transaction participants—both parties and nonparties—should benefit from and be subject to forum selection clauses." *Lukasak v. Premier Sports Events, LLC*, 2020 WL 13578627, at *3 (W.D. Mich. Apr. 2, 2020) (collecting cases).

In *Wilson v. 5 Choices, LLC*, 776 Fed. App'x 320 (6th Cir. 2019), a group of investors brought a civil RICO action accusing defendants of defrauding them in connection with real estate investments. In many respects, Plaintiffs charges are similar in that, in addition to violations of securities laws, Plaintiffs allege fraud and civil conspiracy against all Defendants. (R. 1). The Sixth Circuit found that "Plaintiffs should not be allowed to escape the enforceable forum-selection clauses they had with the privity Defendants merely by instead suing those Defendants' non-privity affiliates to recover on the very contracts containing the forum-selection clauses." *Id*. at 329 (*citing Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 440 (7th Cir. 2012 ) (rejecting the argument that "a plaintiff can defeat a forum-selection clause by its choice … of defendants to name in the suit.")); *see also Clinton v. Janger*, 583 F. Supp. 284, 289–90 (N.D. Ill. 1984) (rejecting the argument that a non-party to a contract with a forum selection clause could not invoke that clause, and finding that "the cases hold that a range of transaction

6

participants, parties and non-parties, should benefit from and be subject to forum selection clauses"); *accord Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n. 5 (9th Cir. 1988) ("the alleged conduct of the non-[privity Defendants] is so closely related to the contractual relationship[s] that the forum selection clause[s] appl[y] to all [D]efendants.")

In *Holtzman v. Vill. Green Mgmt. Co. LLC*, 2020 WL 264331, at *6 (E.D. Mich. Jan. 17, 2020), another district court in this circuit concluded that a defendant, which was "a non-signatory to the Redemption Agreement," could invoke a forum selection clause in that agreement against a signatory plaintiff, because "it was reasonably foreseeable to both Plaintiffs that Defendant would seek to enforce the clause against them." While the Sixth Circuit has determined that a non-signatory to a contract may be bound by "a forum selection clause in that contract if the non-signatory is so sufficiently 'closely related' to the dispute that it is foreseeable that the party will be bound," some courts have acknowledged that the term "closely related" has not been well-defined. *See, e.g., Villanueva v. Barcroft*, 822 F. Supp. 2d 726, 737 (N.D. Ohio 2011).

At the very outset of the Complaint, Plaintiffs assert that "[a]long with [Defendant] Jawahar, Defendants Frank Krasovec ("Krasovec") and Zohar Ziv ("Ziv")—both General Partners—and Defendant Fabian Urquijo ("Urquijo") controlled the Swiftarc Entities." (R. 1, PageID# 2, ¶2). In Count Eight of the Complaint, Plaintiffs allege that "[t]o the extent that Jawahar, Krasovec, and Ziv are not, at law, general partners of the Swiftarc Funds, they are liable to Plaintiffs and others, jointly and severally with the GP LLCs, for all transactions into which Plaintiffs and others entered because they held themselves out as general partners." (R. 1, PageID# 58, ¶297). The LPA Plaintiffs attached to their Complaint states as follows:

"Covered Person" means the General Partner (including, without limitation, the

7

> General Partner in its role as the Partnership Representative and, if applicable, in its capacity as a special limited partner or a former general partner), the Investment Manager, each of their Affiliates, any officers, directors, managers, employees, shareholders, partners, members, agents and consultants of any of the foregoing, the members of the Advisory Committee (including the Limited Partners represented by any member of the Advisory Committee) and any director, officer or manager of any entity in which the Partnership invests serving in such capacity at the request of the General Partner or the Investment Manager.

(R. 1-4, PageID# 147).

Although Plaintiffs' Complaint contends that the aforementioned Defendants are general partners or otherwise intrinsically involved in the management or direction of the said entities, Plaintiffs also seek to disclaim that they are general partners, managers, directors, or otherwise situated, for the purposes of trying to evade the application of a forum selection clause. Plaintiffs make the unconvincing argument that the omission of the term "Covered Persons" from the Clause reflects an unambiguous attempt by the drafters of the agreement to exclude "Covered Persons" from invoking it. (R. 46, PageID# 552-54; R. 53, PageID# 674-75). Plaintiffs opine that because the term "Covered Persons" is included in other provisions in § 4.03 of the agreement, the omission from the Clause at issue is significant. *Id*. Plaintiffs, however, point to section 4.03 that discusses "Liability for Acts and Omissions" as well as indemnification provisions. (R. 104, PageID# 163). The inclusion of the "Covered Persons" language in that section should come as no surprise, as it expressly deals with the liability, or lack thereof, of partnership directors, partners, *et alia*. *Id*. Plaintiffs' inference—that the omission of the "Covered Persons" phrase from the forum selection clause was intended to preclude general partners or other such designated individuals from enforcing the provision—is unwarranted.

Herein, Plaintiffs allege that the three moving Defendants were general partners in a number of the entities at issue, perhaps all of them. (R. 1, PageID# 13). However "closely

8

related" is defined, this Court finds that an individual who signs an agreement with a limited partnership, such as Plaintiffs herein, should reasonably foresee, that a general partner of the limited partnership would be considered so "closely related" as to have standing to invoke a forum selection clause contained within the agreement. *See, e.g., Reagan v. Maquet Cardiovascular U.S. Sales, LLC*, 2015 WL 521049, at *3-4 (N.D. Ohio February 9, 2015) (finding upper-level management employees of defendant corporation sufficiently "closely related" to an agreement containing a forum selection clause because such employees were directly involved in the agreement's execution and also the termination of plaintiff's employment). Herein, general partners or other high-level directors are analogous to upper-level management of a corporation, and Plaintiffs concede that Defendant Jawahar was directly involved in the agreement's execution.

Finally, the Clause states that "the parties," which indisputably covers Plaintiffs, agreed that "any suit, action, or proceeding" connected to any transactions contemplated by the agreement, whether sounding in "contract tort, or otherwise, would be brought in the United States District Court for the District of Delaware or in the Court of Chancery of the State of Delaware[.]" (R. 1-4, PageID# 198). Plaintiffs' reading of the provision would render it a nullity, as Plaintiffs could circumvent the Clause entirely by simply filing suit against the general partners, directors, managers, etc. instead of the limited partnerships themselves. The Court declines to read the LPAs in such a manner.

The Court finds all three moving Defendants—Jawahar, Ziv, and Krasovec—have standing to enforce the forum selection clause.

2. **Lack of Fraud**

Plaintiffs generally aver that the Clause should not apply because their lawsuit contains

claims for fraud. As discussed below, the Clause, however, unequivocally covers tort actions arising out the transactions contemplated by the agreement. Plaintiffs' general assertion "that many of the misrepresentations and omissions were made when Plaintiffs received the Marketing Materials and Offering Documents" and before they signed the LPAs (R. 46, PageID# 558) is also insufficient to avoid the enforcement of the Clause. The thrust of the Complaint is that Defendants "encouraged Plaintiffs to invest in the various Swiftarc Entities through various material misrepresentations" but that the so-called investments amounted to "a classic Ponzi scheme: using new investor funds to pay existing obligations to others…." (R. 1, PageID# 2, ¶1). Plaintiffs, however, have pointed to no fraudulent behavior with respect to the inclusion of the forum selection clause itself.

In order for a forum selection clause to be invalidated based on an allegation of fraud, "the party opposing the clause must show fraud in the inclusion of the clause itself." *Wong*, 589 F.3d at 828. The *Wong* court observed that the Sixth Circuit has "upheld a forum selection clause where the party opposing the clause failed to offer any evidence showing that it did not knowingly and willingly consent to the inclusion of the clause in the agreement." *Id*. (citing *Preferred Cap., Inc. v. Assocs. in Urology*, 453 F.3d 718, 722 (6th Cir. 2006) (finding enforcement of forum selection clause proper where opposing party "produced no evidence which would indicate that [it] was fraudulently induced to enter into the forum selection clause"). "General claims of fraud [ ] do not suffice to invalidate the forum selection clause." *Id*. (quoting *Assocs. of Urology*, 453 F.3d at 722).

Here, as in *Wong*, Plaintiffs argue "general fraud only, rather than fraud in the inclusion of the clause itself." *Id*. Plaintiffs make no allegation that Defendants made false representations concerning the chosen forum, nor do they contend that their agreement to the forum selection

clause was obtained unknowingly or unwillingly. "Because Plaintiffs have made no arguments suggesting that the forum-selection clauses (rather than the contracts in their entirety) were the product of fraud or other misconduct, the district court did not err in dismissing Plaintiffs' claims to allow the forum designated in the forum-selection clauses to address the validity and enforceability of the contracts." *Wilson v. 5 Choices, LLC*, 776 Fed. App'x 320, 327 (6th Cir. 2019) (agreeing with the district court that "[u]nless there is a showing that the alleged fraud or misrepresentation induced the party opposing a forum selection clause to agree to inclusion of that clause in a contract, a general claim of fraud or misrepresentation as to the entire contract does not affect the validity of the forum selection clause.")

Based on the above Sixth Circuit standards, a district court in Michigan rejected a plaintiff's arguments against the enforcement of a forum selection clause and explained that "this is not a case where the party seeking to enforce the forum clause is alleged to have affirmatively misrepresented that disputes would be resolved in a different forum." *Versatrans, Inc. v. Hirsch Int'l Corp.*, No. 12-13913, 2013 WL 943519, at *7 (E.D. Mich. Mar. 11, 2013). Here too, Plaintiffs have not alleged that Defendants represented that another forum, other than Delaware, would apply to any disputes. Also as in *Versatrans, Inc.*, Plaintiffs herein are not claiming fraud in the inclusion of the forum selection clause itself, but rather that the whole agreement itself was procured by fraud.

As Plaintiffs have not asserted a well-pleaded claim that they were fraudulently induced to agree to the *forum selection clause itself*, their challenge to the Clause fails.[3]

---

[3] The Court agrees with *Liafail, Inc. v. Learning 2000, Inc.*, 2001 WL 1555308, at *3 (W.D. Ky. Aug. 29, 2001), which astutely observed that "[i]f a forum selection agreement could be avoided every time an issue going to the formation of the contract is raised, the efficiency and certainty of choice of law and forum achieved by forum selection clauses would be largely nullified."

### 3. Other Textual Arguments

Plaintiffs raise other arguments against the enforcement of the Clause, but they are premised upon unpersuasive interpretations of the text.

First, Plaintiffs suggest that "[t]he plain language of the Clause also requires Defendants to show that Plaintiffs, through this action, are 'seeking to enforce' the LPAs themselves." (R. 46, PageID# 558). The Clause is not reasonably susceptible to such an interpretation, and Plaintiffs' interpretation of the Clause relies on a selective reading that eliminates whole phrases from the Clause. In relevant part, the Clause states that "the parties hereby agree that any suit, action, or proceeding seeking to enforce any provision of, *or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby*, whether in contract, tort, or otherwise, shall be brought in the United States District Court for the District of Delaware …." (R. 1-4, PageID# 198, Exh. 4) (emphasis added). Thus, the Clause plainly applies to "any matter" arising out of either the agreement, or arising out of any transaction contemplated by the agreement, including claims sounding in tort.

Reading the Complaint as a whole, it is clear the essence of Plaintiffs' claims is that they invested money with Defendants, who allegedly squandered or misappropriated their funds. Even if the funds were never invested, according to the parties' alleged intent, this lawsuit still arises out of transactions contemplated by the agreements. Count One of the Complaint expressly revolves around the allegation that Defendants engaged in wrongful conduct "in connection with the purchase or sale of securities"—the transactions contemplated by the LPAs. (R. 1, PageID# 36, ¶240). Whether Plaintiffs are seeking to enforce the LPAs themselves is not determinative, because the Clause plainly covers actions much broader than a breach of contract claim to

enforce the LPAs themselves.

Plaintiffs' other argument against enforcement of the clause is similarly unpersuasive, as it too relies on a selective reading of the Clause. Specifically, Plaintiffs claim that the Clause "requires a 'transaction of business' in Delaware to apply"— an alleged requirement that has not been met. (R. 46, PageID# 554-57). Plaintiffs further aver that the phrase "transaction of business" is not defined in the LPAs. (R. 46, PageID# 555). Despite Plaintiff's lengthy argument, it does not account for the language that states "<u>any case of action</u> arising out of this Agreement **shall be deemed to have arisen from a transaction of business in the State of Delaware**…" (R. 1-4, PageID# 198, Exh. 4) (emphasis added). As already discussed above, the Clause covers *any cause of action* "based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby" whether sounding in contract, tort, or some other action. In other words, the Clause does *not* contain any requirement for a business transaction in the State of Delaware for it to become operative. To the contrary, the only reasonable interpretation of the Clause is that any action that arises out of the agreement (or the transactions contemplated by it) are to be treated (*i.e.* "shall be deemed") as transactions occurring in Delaware.

Plaintiffs' textual arguments are contrary to the plain meaning of the operative language and are not persuasive.

### III. Conclusion

Because Plaintiffs' claims are governed by the agreement's forum-selection clauses, which vests jurisdiction in Delaware, this Court declines to reach the question of whether Plaintiffs' complaint fails to state a claim. To the extent there is a question about whether Plaintiffs' complaint plausibly states a claim against one or more of the Defendants, upon the present or amended pleading(s), those will be issues for the proper forum to decide in the first

instance.

Therefore, the Court GRANTS Defendants' Motions to Transfer (R. 35 & 45), but DENIES without prejudice those motions to the extent they seek dismissal of the Plaintiffs' claims. (R. 35 & 45). In addition, Defendant Fabian Urquijo's Motion to dismiss for failure to state a claim (R. 36) is also DENIED without prejudice.[4] These motions are subject to refiling on a schedule to be set by the U.S. District Court for Delaware.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States District Judge

Date: September 9, 2025

---

[4] To clarify, the denial of the motions to dismiss is *not* a decision on the merits of the arguments raised therein.